# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JAMES BESHIRES, JR.,

       Plaintiff,

    v.                                                          Civ. No. 17-1111 JCH/SCY

UNIVERSITY OF NEW MEXICO
HOSPITAL,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Defendant University of New Mexico

Hospital's Motion For Summary Judgment, filed January 14, 2019 (Doc. 36), and Plaintiff

James E. Beshires, Jr.'s Motion for Summary Judgment, filed March 11, 2019 (Doc. 56). United

States District Judge Judith C. Herrera referred this matter to me on December 12, 2017,

pursuant to 28 U.S.C. § 636(b)(1). Doc. 8. Consistent with that Order of Reference, the Court

enters these proposed findings and recommended disposition. I recommend that the Court

**GRANT** Defendant University of New Mexico Hospital's Motion For Summary Judgment and

**DENY** Plaintiff James E. Beshires, Jr.'s Motion for Summary Judgment.

## BACKGROUND

### A.    Procedural Background

On October 6, 2017, Plaintiff filed the present lawsuit in state court bringing claims for

age discrimination. Doc. 1-1. He alleged that the defendants unlawfully terminated his

employment one month following his 60th birthday and that five other employees over 60 were

terminated in his nine-person department in the past four years. *Id.* He asserted claims against the

University of New Mexico Hospital, Mochelle Billingsley, Sheena Ferguson, and Steve

McKernan. *Id.*[1] On November 8, 2017, those defendants removed the case to federal court, alleging that Plaintiff's complaint raises a federal cause of action under the Age Discrimination in Employment Act ("ADEA") and that this case thus falls within this Court's original jurisdiction pursuant to 28 U.S.C. § 1331. Doc. 1. Plaintiff did not file a motion to remand or otherwise argue with this characterization of his claims.

I held a scheduling conference on January 18, 2018 and set a due date for pretrial motions of August 16, 2018. Docs. 11 & 12. Following a status conference on June 28, 2018, I extended the deadline for pretrial motions to October 15, 2018. Docs. 22 & 24. At the request of Defendant, and without an objection from Plaintiff, I extended the pretrial motions deadline again, to January 14, 2019. Docs. 33 & 34. In the same Order, I set the discovery motions deadline for January 2, 2019. Doc. 34. On February 4—two weeks after the pretrial motions deadline had expired—Plaintiff moved for a one-month extension of "Case Management deadlines" due to the federal government shutdown. Doc. 39. Defendant opposed it. Doc. 46. I denied that motion, noting that the federal government is not a party to this case, the Court did not cease operations, and Plaintiff's motion failed to comply with Civil Local Rule 7.1(a) (requiring a motion to contain recitation of a good-faith request for concurrence). Doc. 49. Neither party asked for any more extensions to case management deadlines, including the pretrial motions deadline. Despite this, Plaintiff filed his Motion for Summary Judgment on March 11, 2019, nearly two months late. Doc. 56.

Meanwhile, Defendant timely filed its Motion for Summary Judgment and Memorandum in Support on January 14, 2019. Docs. 36 & 37. Plaintiff filed a Response, Doc. 40, Defendant

---

[1] On June 8, 2018, Judge Herrera filed an order dismissing individual defendants Mochelle Billingsley, Sheena Ferguson and Steve McKernan with prejudice. Doc. 20.

filed a Reply, Doc. 51, and with leave of Court, Plaintiff filed a Surreply, Doc. 55. Defendant responded to Plaintiff's Motion for Summary Judgment on March 25, 2019. Doc. 60. Plaintiff did not file a Reply, and the time to do so has passed. Therefore, both motions are fully briefed and ready for decision.

B.    <u>Factual Background</u>

1.    <u>The Court will not deem Defendant's facts undisputed.</u>

Defendant argues that, because Plaintiff failed to specifically controvert its asserted undisputed material facts as this Court's local rules require, the Court should deem the facts set forth in its Motion for Summary Judgment undisputed. Doc. 51 at 2. Under Federal Rule of Civil Procedure 56(a) and Local Rule 56.1, a movant seeking summary judgment must "set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists." The response opposing summary judgment must "contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist." D.N.M.LR-Civ. 56.1(b). "Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." *Id.* Most importantly, "[a]ll material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted" in this fashion. *Id.* Defendant correctly points out that Plaintiff did not specifically controvert its asserted undisputed material facts as the local rules require.

Nonetheless, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This rule applies at the summary judgment stage of a case as well. *Id.* at 1110 n.3. "Furthermore, district courts must take care to insure that pro se litigants are provided with proper notice regarding the complex procedural issues involved in summary

judgment proceedings." *Id.* at 1110 (internal quotation marks and alterations omitted). A "pro se plaintiff should be advised of his right to file counter-affidavits or other responsive material and alerted to the fact that his failure to so respond might result in the entry of summary judgment against him." *Id.* (internal quotation marks and alterations omitted). "In addition, pro se litigants are to be given reasonable opportunity to remedy the defects in their pleadings." *Id.* at 1110 n.3. In this case, Plaintiff has filed a sworn affidavit, and he has verified his Response to Defendant's Motion for Summary Judgment, his Surreply, and his Motion for Summary Judgment. Doc. 40 at 8; Doc. 42; Doc. 55 at 11; Doc. 56 at 3. I recommend that Plaintiff not be strictly held to the Local Rule requiring him to specifically controvert Defendant's Facts in numbered paragraphs with citations to the record. Given this recommendation, I will discuss the factual background in this case with reference to Defendant's Facts as well as to any statements by Plaintiff in his affidavit or briefs disputing those facts.

## 2.   Defendant's statement of facts

Plaintiff is a former employee of Defendant who worked as an RN On-Duty House Administrator. As a condition of employment, Plaintiff signed an employment contract acknowledging that he was "subject to termination without cause or non-renewal" of the contract.[2] Doc. 37 at 2 ¶¶ 1-2; Doc. 37-1 at 1. Plaintiff's supervisor and Executive Director of Clinical Services, Moschell Billingsley, decided not to renew Plaintiff's contract and hand delivered his notice of contract non-renewal during a meeting on April 29, 2016. Doc. 50-2 ¶ 5.[3]

---

[2] Plaintiff does not dispute he signed this contract, but argues that the contract is illegal. Doc. 40 at 1-2.

[3] Defendant originally filed an incomplete version of Ms. Billingsley's affidavit. Doc. 37-1. Defendant then filed two corrections: one to include additional emails, and one to fix the numbering of the paragraphs in the affidavit. Docs. 45 & 50. Defendant agreed that Plaintiff would be able to file a surreply in light of these corrections, Doc. 50 at 1-2, and with Court permission, Doc. 58, Plaintiff did so, Doc. 55. Defendant further represents to the Court that the

She decided not to renew Plaintiff's contract because he resisted changes she implemented, did not commit to helping execute the initiatives she implemented, and refused to adapt to how his role as an administrative supervisor was changing due to the new directives. Doc. 50-1 ¶ 8.[4] One such initiative was the transfer of low acuity patients to other hospitals so they could obtain speedier care and a hospital bed. *Id.* at ¶ 7. Another was to organize patient movement throughout the different hospital departments to ensure that patients were being treated in the most efficient manner. *Id.*

Defendants assert Plaintiff was also terminated because Ms. Billingsley received complaints regarding Plaintiff's refusal to perform various aspects of his job during the three-month time period when Ms. Billingsley was his supervisor. *Id.* ¶ 9. Ms. Billingsley received a complaint that, after a multicar accident, Plaintiff did not expedite placement of child accident victims in hospital rooms as his job duties required. *Id.* ¶ 10. Instead, he left the children in the Emergency Room all night before they were eventually placed in rooms. *Id.* Ms. Billingsley received another complaint that Plaintiff refused to facilitate a patient transfer between two departments. *Id.* ¶ 11. The accepting department had requested that an employee sit with the transferring patient because he had orders to be on 1:1 observation for suicide risk. *Id.* Plaintiff refused or failed to prearrange for the necessary accompanying employee to facilitate patient

---

missing email exhibits had been provided to Plaintiff early in discovery. Doc. 51 at 4. Because no party has been prejudiced by the errors in Ms. Billingsley's original affidavit, Doc. 37-2, I recommend the Court consider the corrected versions of the affidavit and exhibits.

[4] In his Surreply, Plaintiff vigorously disputes the legitimacy of these reasons. Doc. 55 at 4-7. But he does not dispute that Ms. Billingsley has offered these reasons as the nondiscriminatory bases for his termination. I address the parties' dispute about the legitimacy of Defendant's proffered reason for dismissing Plaintiff in the Discussion section.

movement between departments. *Id.* Plaintiff refused to resolve the issue in person, as required by his position, and instead told each department to deal with the issue on their own. *Id.*

Ms. Billingsley received several emails from UNMH employees complaining about Plaintiff's failure to facilitate a patient transfer between two departments and failure to expedite placement of children who were victims of the accident into hospital rooms in pediatrics. *Id.* ¶ 12. Ms. Billingsley observed that Plaintiff had a disengaged attitude about his position at UNMH and he had a poor relationship with members of the RN Supervisory staff. *Id.* ¶ 13. Ms. Billingsley thus chose not to renew Plaintiff's contract due to his poor performance as a supervisor and refusal to perform basic aspects of his position. *Id.* ¶ 15.

In his Complaint, Plaintiff referred to four other individuals in his group over the age of 60 who were terminated. Doc. 1-1 at 1. Defendant identifies them as G.V.S., P.N., I.S., and J.B., with full names redacted for privacy. Doc. 36 ¶ 16 & n.1. Ryan Randall, the Director of Employee & Labor Relations for UNMH, reviewed the personnel records for three of the four employees. *Id.* ¶¶ 16-17. He determined that G.V.S. voluntarily retired from his RN On-Duty House Administrator position effective December 20, 2012; he was not terminated or non-renewed by UNMH. *Id.* ¶ 18. Effective October 5, 2012, P.N. resigned from her RN On-Duty House Administrator position in lieu of discharge for misconduct. *Id.* ¶ 19. I.S. retired from her position of Manager RN On-Duty House Administrator (the position that manages the RN On-Duty House Administrators) after receiving notice on March 27, 2014 that her employment contract would not be renewed. *Id.* ¶ 20. Out of ten RN On-Duty House Administrators currently

employed by UNMH, all of whom are supervised by Moschell Billingsley, one of the current incumbents is 67 years old and has worked in the same position since April 2007. *Id.* ¶ 21.[5]

## **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

Under the ADEA, it is illegal for an employer to discharge or otherwise discriminate against any individual who is at least 40 years of age "because of such individual's age." 29

---

[5] Plaintiff argues this employee is a longtime friend of Ms. Billingsley's and therefore not relevant to whether Ms. Billingsley terminated Plaintiff because of his age. Doc. 40 at 4-5. Because I do not rely on the existence of a 67-year old employee in the group in recommending the grant of summary judgment in Defendant's favor, I deem the Fact undisputed but immaterial.

U.S.C. §§ 623(a)(1), 631(a). The ADEA does not authorize a mixed-motive age discrimination claim; an ADEA plaintiff must show that his or her age was "the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that his age was the "but-for" cause of the adverse action. *Id.* at 176-78. "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 180. A plaintiff does not have to prove that age was the sole motivating factor or that the reasons offered by the defendant are false "if he proves that age was also a reason, and that age was the factor that made a difference." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010).

An employee claiming disparate treatment under the ADEA may survive summary judgment by providing circumstantial rather than direct evidence of discrimination as set forth in *McDonnell Douglas*. *See Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). To make out a prima facie case of age discrimination, the plaintiff must prove: (1) he is over 40 years old; (2) he suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). Although *McDonnell Douglas* shifts the burden of production, throughout the process the burden of persuasion remains with the plaintiff to show that the defendant discriminated on an illegal basis. *Jones*, 617 F.3d at 1278.

If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer a legitimate, non-discriminatory rationale for the adverse employment action. *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194-95 (10th Cir. 2011); *Wilkerson*, 606 F.3d at

1266. If the defendant meets his burden, the burden of production returns to the plaintiff to show that the defendant's proffered rationale is pretextual, or that age was a determinative factor in the employment decision. *See Crowe*, 649 F.3d at 1195; *Wilkerson*, 606 F.3d at 1266. Pretext can be shown through evidence of weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reasons that a reasonable jury could rationally find to be unworthy of credence; through direct evidence that the proffered reason is false; through evidence that the employer acted contrary to a policy or practice when making the adverse employment decision; or through evidence that the plaintiff was treated differently from similarly-situated employees. *Crowe*, 649 F.3d at 1196; *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). The court does "not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118-19 (10th Cir. 2007).

Although the court must construe all facts favorably to the plaintiff, in evaluating pretext arguments, the court must consider the facts as they appeared to decision-makers. *Bennett*, 792 F.3d at 1268. To survive summary judgment, the plaintiff must come forward with evidence that would persuade a reasonable jury that the defendant's proffered reason was merely pretext for age discrimination. *See Turner v. Public Serv. Co. of Colo.*, 563 F.3d 1136, 1143-44 (10th Cir. 2009). "Consequently, once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." *Jones*, 617 F.3d at 1280 (internal quotation marks omitted).

<u>**DISCUSSION**</u>

I.    **Defendant Is Entitled To Summary Judgment On Plaintiff's Claim Of Age Discrimination.**

A.    <u>Plaintiff Cannot Avoid Summary Judgment Under Fed. R. Civ. P. 56(d).</u>

I first address Plaintiff's argument that he lacks information necessary to prosecute his case because Defendant was noncompliant during discovery. Doc. 40 at 2; Doc. 55 at 3-4. Plaintiff refers to his motion to compel, filed January 10, 2019. Doc. 35. I held a hearing on this motion on April 8, 2019. Doc. 62. I noted that the motion was untimely under the scheduling order, Doc. 34, and that I would take such untimeliness into account in ruling on the requests. Doc. 62 at 1. On April 10, I granted in part and denied in part the motion. Doc. 63. I denied the motion in most respects, but ordered Defendant to produce:

- The number of age discrimination complaints lodged against Defendant Moschell Billingsley for the years 2015 through October 1, 2018. Doc. 63 at 1.

- The ages of employees Defendant Moschell Billingsley terminated for the years 2015 through October 1, 2018. Doc. 63 at 3.

On April 23, Defendant filed a certificate of service of its Supplemental Objections, Answers, and Responses to Plaintiff's Third Set of Interrogatories, Request for Production, and Request for Admission. Doc. 64.

Although Plaintiff does not mention Federal Rule of Civil Procedure 56(d), his argument that Defendant is not entitled to summary judgment because it failed to provide him essential information he requested is akin to an argument that the Court should deny Defendant's motion for summary judgment based on Rule 56(d). Although Plaintiff did not cite to Rule 56(d), because Plaintiff is proceeding pro se, the Court should excuse this failure and consider whether to deny Defendant's motion pursuant to Rule 56(d). Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The Tenth Circuit has explained that "[t]he party requesting additional discovery must present an affidavit that identifies 'the probable facts not available and what steps have been taken to obtain these facts.'" *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013). "The nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact." *Id.* Rule 56(d) applies to pro se litigants with equal force. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) (discussing Rule 56(d)'s predecessor, Rule 56(f)).

Plaintiff has not made a sufficient showing to avoid summary judgment through application of this rule. Notably, discovery is complete and the Court has ruled on his motion to compel. Plaintiff complains that he did not receive information he requested that "is material to this case and provides evidence that the Administration of the University of New Mexico Hospital is aware of the discriminatory practices of some of its supervisors and has made the decision to monetize the liability of discrimination complaints as an expense rather than take actions to eliminate the discrimination." Doc. 40 at 2. In doing so, Plaintiff repeats the same argument he made in support of his motion to compel that I previously rejected.

Except for the few exceptions noted above, I denied Plaintiff's Motion to Compel because "Plaintiff has failed to establish good cause for filing his motion to compel after the Court's deadline, particularly given that the information sought likely would require follow up that could significantly delay the completion of discovery." Doc. 63. I also denied many of Plaintiff's requests as overbroad and/or not relevant to Plaintiff's age discrimination claim, including the requests that sought evidence of Defendant's net worth. Doc. 63. Plaintiff has not

given any grounds to reconsider these rulings, and I note that Plaintiff has not sought to submit additional briefing in light of Defendant's April 23's disclosures as to the adequacy of these disclosures or their content. In short, Plaintiff has had a full opportunity to obtain written discovery, including the opportunity to move to compel Defendant to provide discovery Plaintiff believed Defendant wrongfully withheld. In addition to obtaining evidence through written discovery, Plaintiff also had the opportunity to obtain evidence through deposition testimony. Given the many opportunities Plaintiff has had to obtain all discovery to which he is entitled, I reject his argument that, because he lacks information he needs to respond effectively to Defendant's motion for summary judgment, the Court should deny the motion.

B.     Plaintiff Has Stated a Prima Facie Case of Age Discrimination Under The *McDonnell Douglas* Burden-Shifting Test.

Plaintiff does not offer any direct evidence of age discrimination. Black's Law Dictionary (11th ed. 2019) (defining "direct evidence" as "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption."). Plaintiff must therefore navigate the burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jones*, 617 F.3d at 1278. Defendant argues that Plaintiff's claim fails at the first step of the test because he was not performing satisfactory work and, therefore, cannot make out a prima facie case of age discrimination. Doc. 37 at 10-11.

Defendant also recognizes, however, that the Tenth Circuit has not always included this element (satisfactory work) in the formulation of a prima facie age discrimination case. *See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 n.1 (10th Cir. 2015) ("In *McDonnell Douglas*, the Supreme Court noted that the elements required for a plaintiff's prima facie case may vary depending on the context of the claim and the nature of the alleged conduct. The Tenth Circuit has utilized a number of similar versions of the test, expressing a preference

for more concise formulations." (citations omitted)). Defendant also recognizes that "[t]he Tenth Circuit has questioned whether a defendant can defeat a plaintiff's prima facie case under the ADEA simply by showing that the plaintiff's work was unsatisfactory from the point of view of the defendant." Doc. 37 at 11 n.3 (citing *Ortiz v. Norton*, 254 F.3d 889, 895 (10th Cir. 2001)). "The Tenth Circuit has proposed that the plaintiff be given an opportunity to show that the evidence of unsatisfactory work is itself pretextual." *Id.*

The parties have extensively briefed the question of Plaintiff's work performance within the framework of the next two steps of the burden-shifting test: whether Defendant has proffered facially nondiscriminatory reasons for the challenged action, and whether there is evidence those reasons are pretextual. Defendant does not contest any other prong of the prima facie case. Therefore, I recommend rejecting Defendant's argument that Plaintiff has not made out a prima facie case because his work was unsatisfactory. To do otherwise would deprive Plaintiff of the opportunity to prove that Defendant's asserted belief that his work was unsatisfactory is a pretext for age discrimination. *Ortiz*, 254 F.3d at 895.

C.    Defendant Has Offered Facially Nondiscriminatory Reasons For Plaintiff's Termination.

Once a plaintiff establishes a prima facie case of discrimination, the defendant must offer a non-discriminatory reason for the adverse employment action. Defendant offers the following facially nondiscriminatory reasons for terminating Plaintiff's employment:

> Plaintiff resisted changes being implemented by Ms. Billingsley, did not commit to helping implement Ms. Billingsley's initiatives, and refused to adapt to how his role as an administrative supervisor was changing due to the new directives. Ms. Billingsley received complaints regarding Plaintiff's refusal to perform various aspects of his job during the three-month period that Ms. Billingsley was his supervisor, including Plaintiff refusing to expedite placement of patients in beds in particular departments at the hospital and Plaintiff refusing to facilitate a patient transfer between two departments. Plaintiff also had a poor relationship with members of the RN Supervisor staff and had a disengaged attitude about his position. Plaintiff's contract was therefore not renewed due to his poor

> performance as an administrative supervisor and refusal to perform basic aspects
> of his position as an administrative supervisor.

Doc. 37 at 11-12 (citations omitted).

At step two of the burden-shifting test, "[t]he defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (footnote omitted). I conclude that Defendant has satisfied this burden by asserting "reasonably specific and clear," *see id.*, facially nondiscriminatory reasons for the challenged action. I thus turn to Plaintiff's arguments of pretext.

D.      Plaintiff Has Failed To Show Defendant's Reasons Are Pretextual.

Although he does not acknowledge the framework of the *McDonnell Douglas* test, because Plaintiff is pro se, I construe his pleadings liberally. I will address the arguments in Plaintiff's Response and his Surreply in the context of whether Plaintiff has offered reasons to believe that Defendant's explanations for his termination are pretextual. I find, however, that Plaintiff has not satisfied this burden.

1.      Plaintiff's employment contract is irrelevant.

Plaintiff argues that the "at-will" employment contract he signed is an illegal contract of adhesion. Doc. 40 at 1-2; Doc. 55 at 2-3. In an age discrimination case, however, whether Plaintiff is an at-will employee is irrelevant. Once Plaintiff makes out a prima facie case of age discrimination, Defendant is required to proffer facially nondiscriminatory reasons for the adverse action, regardless of the existence of an at-will employment relationship. In addition, Defendant's proffered reasons for Plaintiff's termination in this case have nothing to do with the

contract. Doc. 37 at 11-12. Defendant is not defending its action on the basis that Plaintiff signed an "at will" employment contract; rather, Defendant has stated that Plaintiff was not satisfactorily performing his job and has given details regarding that job performance. The "at will" employment contract is irrelevant to whether those reasons are pretextual. Further, Plaintiff points to no provision of the contract that could provide evidence that Defendant was motivated to hire and retain younger employees. Therefore, the reasons by which Plaintiff asserts his contract with Defendant was illegal, even if true, do not advance his pretext argument.

2.    The release-of-claims form is not evidence of discrimination.

Plaintiff argues that the existence of a "standardized Release of Claims form that would relinquish the Plaintiff's rights under any of the antidiscrimination laws, and specifically mentions the ADEA," is evidence of Defendant's culture of ignoring compliance with antidiscrimination laws. Doc. 40 at 3; Doc. 55 at 1-2. Plaintiff refers to a form that apparently accompanied the Defendant's termination notice to Plaintiff. Doc. 9 at 12-16. In the notice, Defendant notified Plaintiff that he was eligible for a severance benefit in exchange for releasing any claims Plaintiff had or may have against Defendant, including claims under the ADEA. Doc. 9 at 12.

Defendant's offer of severance pay in exchange for a release of claims is not evidence of pretext. Instead, it is only evidence that Defendant valued avoiding a lawsuit at a certain amount of money. Such offers are common and have little to no bearing on whether Defendant's reasons for not renewing Plaintiff's contract were pretextual.

3.    Defendant's reasons for the action have not shifted over time.

Plaintiff argues that Defendant should not be able to obtain summary judgment on the basis of reasons it did not present to him at the time of his notice of non-renewal. Doc. 40 at 3-4; Doc. 55 at 4. Plaintiff's argument evinces a misapprehension of the law. Defendant's burden to

present facially non-discriminatory reasons only arose after Plaintiff filed a lawsuit and made out a prima facie case of age discrimination. The ADEA did not require Defendant to present those reasons to Plaintiff when it took the challenged action.

Plaintiff similarly complains that the reasons Defendant presents in its brief for terminating him are inconsistent with its letter informing Plaintiff of his "Termination Without Cause." Doc. 55 at 4; *see* Doc. 19 at 12. Again, although *McDonnell Douglas* requires Defendant to produce in this lawsuit its reasons for terminating Plaintiff, Defendant was under no legal requirement to produce its reasons when it sent this letter to Plaintiff. True, evidence that an employer's justifications for an action have shifted over time can be evidence of pretext. But that is not the case here, where Defendant first presented no reasons and then came forth with its reasons during litigation. *See Ramsey v. Labette Cty. Med. Ctr.*, 297 F. App'x 730, 734 (10th Cir. 2008) ("Pretext is not shown if the employer does not give inconsistent reasons, but instead merely elaborates on the initial justification for termination.").

4. Defendant's alleged inadequate staffing does not show that Ms. Billingsley's reasons for terminating Plaintiff are not worthy of belief.

Plaintiff argues that he cannot be held responsible for placement delays that occurred while he was the RN On-Duty. He argues that such delays are a product of inadequate hospital staffing, something over which he had no control. Doc. 40 at 4; Doc. 55 at 4-5. Although this is a sympathetic argument, it is not evidence that Defendant's reasons are a pretext for discrimination. "Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007). "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those

reasons and acted in good faith upon those beliefs." *Id.* (internal quotation marks omitted).

"[E]vidence suggesting [the employer]'s reasons were inaccurate have no bearing on our analysis

unless [the plaintiff] can show that [the employer]'s agents knew of such inaccuracies at the time

of the termination." *Ramsey v. Labette Cnty. Med. Ctr.*, 297 F. App'x 730, 735 (10th Cir. 2008).

Even if UNMH did have inadequate staffing, this fact would not undermine the credibility of Ms.

Billingsley's explanation that she believed Plaintiff failed to fulfill his duties as a supervisor.

Doc. 50-1 at ¶ 10.

Further, Plaintiff does not dispute issues Ms. Billingsley had with his attitude and her

receipt of complaints about him. For instance, he does not dispute that, rather than resolving an

issue in person as his position required, he reacted in a confrontational manner and told each

department to deal with the issue on their own. Doc. 50-1 at 2 ¶ 11; Doc. 50-1 at 6 (when an RN

supervisor asked Plaintiff to assist her in communicating with the Emergency Department,

Plaintiff "responded in a confrontational manner" and refused to help until the RN supervisor

threatened to inform the unit supervisor about the issue). Nor does Plaintiff deny that Ms.

Billingsley received several complaints about him when he was in charge. *See* Doc. 50-1 at 5-9

(emails setting forth complaints about Plaintiff from other UNMH employees). Plaintiff

characterizes one of these complaints as "frivolous," Doc. 55 at 5-6, but relying on other

employees' observations, even erroneously, is not evidence of pretext so long as the employer

honestly believed the observations. *Finney v. Lockheed Martin Corp.*, 654 F. App'x 943, 947

(10th Cir. 2016).

5.    Past performance reviews do not provide evidence that Plaintiff was
      performing well in 2016.

Plaintiff avers that he had 16 years of excellent employee performance reviews, with no

complaints. Doc. 40 at 4; Doc. 55 at 7. But "ignor[ing] previous positive performance reviews"

is not evidence of pretext, "so long as [the employer] honestly believed [the plaintiff]'s performance was below average." *Finney v. Lockheed Martin Corp.*, 654 F. App'x 943, 947 (10th Cir. 2016); *see also Doyle v. Nordam Grp., Inc.*, 492 F. App'x 846, 851 (10th Cir. 2012) (satisfactory performance review does not render employer's explanation pretextual). In this case, Plaintiff does not dispute that Ms. Billingsly attempted to make a number of changes in 2016. In fact, Plaintiff admits that he expressed doubts that Ms. Billingsley's changes would work. Doc. 55 at 6. Thus, the change from Plaintiff's *historical* positive performance reviews is consistent with Ms. Billingsly's explanation that, in 2016, she was "tasked with implementing a number of *new* initiatives" and that Plaintiff was uncooperative with them. Doc. 50-1 at ¶¶ 7-8 (emphasis added). In light of the undisputed evidence that Ms. Billingsly attempted to make changes in 2016 to which Plaintiff was resistant, I find that Plaintiff's reference to his positive performance reviews for the 16 years prior to being supervised by Ms. Billingsley does not indicate that Ms. Billingsley's stated reasons for evaluating Plaintiff poorly, from January to June 2016, were pretextual.

6.    Plaintiff's comparator evidence does not satisfy his burden.

Plaintiff argues that, of a nine-person group, he and four others over the age of 60 were terminated. Doc. 50-2 at 2. Defendant identifies them as G.V.S., P.N., I.S., and J.B., with full names redacted for privacy. Doc. 36 at 4-5 ¶ 16 & n.1. "It is uniformly recognized that statistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class." *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991). "[I]n order for statistical evidence to create an inference of discrimination," however, "the statistics must show a significant disparity and eliminate nondiscriminatory explanations for the disparity." *Id.* For example, in *Pippin v. Burlington Resources Oil And Gas Co.*, "the fact that fourteen of the nineteen employees

terminated in the 2000 RIF were over forty" was not probative evidence of discrimination because it did "not account for any of these different individuals' circumstances, skills, or prior performances." 440 F.3d 1186, 1198 (10th Cir. 2006).

Here, Defendant presents nondiscriminatory reasons for the actions taken against the other four individuals and demonstrates that there were differences in all the individuals' circumstances. Defendant states that G.V.S. retired, and was not terminated. Doc. 37-3 ¶ 5. Second, P.N. resigned from her position in lieu of termination for misconduct. *Id.* ¶ 6. Third, I.S. retired after receiving notice that her contract would not be renewed based on her inability to adequately perform her duties. *Id.* ¶ 7. Finally, J.B. was terminated because of work misconduct, including working while impaired and sending inappropriate text messages to coworkers. Doc. 50-1 ¶ 17.

Plaintiff argues that this evidence is hearsay. Doc. 55 at 9. Plaintiff is incorrect. To explain J.B.'s termination, Ms. Billingsley provided a sworn affidavit based on personal knowledge—she made the decision to terminate J.B. and explains why. Doc. 50-1 ¶ 17. This is not hearsay. *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) ("Parties may . . . submit affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form.").

As for the situations of the other three individuals, Defendant provides a sworn affidavit from Ryan Randall, the Director of Employee & Labor Relations for the University of New Mexico Hospitals since February 2010. Doc. 37-3 ¶ 1. Mr. Randall states that he is "familiar with the personnel records and hiring and separation paperwork for employees of UNMH, including those employed in the position of RN On-Duty House Administrator that was held by

Plaintiff James Beshires." *Id.* ¶ 2. He "reviewed the personnel records" for these three individuals and states the records are "made at or near the time of an employment action by a person knowledgeable of the facts recorded, kept in the ordinary course of business for UNMH as part of the regular practice of personnel management for UNMH." *Id.* ¶ 4.

This is sufficient to establish the hearsay exception under the business records rule. "Rule 803(6) of the Federal Rules of Evidence provides an exception to the hearsay rule for business records if they are 'kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum [record].'" *United States v. Gwathney*, 465 F.3d 1133, 1140 (10th Cir. 2006). To satisfy Rule 803(6), "a document must (1) have been prepared in the normal course of business; (2) have been made at or near the time of the events it records; (3) be based on the personal knowledge of the entrant or of an informant who had a business duty to transmit the information to the entrant; and (4) not have involved sources, methods, or circumstances indicating a lack of trustworthiness." *Id.* at 1140-41 (internal quotation marks and alteration omitted). The recitations in Mr. Randall's affidavit track these elements. Doc. 37-3 ¶ 4. These assertions are not necessarily conclusory just because they are formulaic. Mr. Randall's affidavit sufficiently explains the records he used to gain knowledge about these individuals. His assertions therefore fall within an exception to the rule against hearsay.

Plaintiff also argues that the assertions regarding these four individuals should not be accepted due to "inconsistencies in record keeping and documentation exhibited by Defendants in their addendum to their Motion for Summary Judgment." Doc. 55 at 6. I believe Plaintiff is referring to the corrected affidavit of Mochelle Billingsley which, as discussed above, was originally filed with a missing page and without the email attachments. *See* Doc. 37-1, 45 & 50.

Also as discussed above, Plaintiff had the opportunity to file a Surreply in response to the corrected affidavit. I recommend the Court consider the corrected affidavit because no party was prejudiced by the original mistake. Finally, I note that this mistake did not pertain to the affidavit of Mr. Randall, which was originally filed with the Motion for Summary Judgment and has not needed correction. Doc. 37-3. Because it is Mr. Randall who supplied most of the information on the comparators, the mistake with Ms. Billingsley's affidavit is largely irrelevant to this argument.

In sum, although Plaintiff presented some statistical evidence in support of his pretext argument, Defendant put forth nondiscriminatory reasons for the other employees' separation from employment. And, Plaintiff has not put forth any evidence disputing these stated reasons. Therefore, Plaintiff's presentation of comparator evidence fails to create a genuine dispute of material fact regarding whether Defendant's stated reason for not renewing Plaintiff's contract were pretextual. *Cf. Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (at step three of the burden-shifting test, "the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief" (internal quotation marks omitted)).

## II. The Court Should Deny Plaintiff's Cross-Motion for Summary Judgment.

The Court should deny Plaintiff's Summary Judgment Motion both because Plaintiff filed it out of time and because it lacks merit. Plaintiff filed his Motion for Summary Judgment on March 11, 2019. Doc. 56. As discussed above, this filing was two months late. Doc. 34. I note that untimeliness has been a persistent problem for Plaintiff. His Motion to Compel was untimely, his Motion for Summary Judgment was untimely, and his Response to Defendant's

Motion for Summary Judgment was untimely.[6] Although Plaintiff is a pro se litigant, "he nevertheless must follow the same rules of procedure that govern other litigants." *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992) (affirming dismissal of a case because a pro se litigant, among other things, failed to comply with a local rule governing timing of a memorandum in opposition to a motion). Two months is a very lengthy period of delay.

Plaintiff also fails to set forth any undisputed facts in his motion. Instead, his motion contains only argument. This would constitute another sufficient and independent ground to deny his motion. *Hendrix v. Employer's Reinsurance Corp.*, 26 F. App'x 873, 874 (10th Cir. 2002) (affirming district court's denial of pro se summary judgment motion that did not contain a statement of undisputed facts).

Even excusing these deficiencies, however, none of Plaintiff's arguments entitle him to summary judgment. Plaintiff first argues that Defendant's failure to comply with his discovery requests entitles him to summary judgment. Doc. 56 at 1. As discussed above, the information Plaintiff complains that he did not receive was the subject of Plaintiff's untimely Motion to Compel. The Court ordered Defendant to provide certain information in connection with that motion and no indication exists that Defendant failed to provide the information the Court ordered it to produce. The remaining information Plaintiff sought was overbroad and irrelevant.

Second, Plaintiff argues that he has presented a prima facie case of age discrimination. Doc. 56 at 1. As set forth above, I agree that Plaintiff has established a prima facie case, but this does not entitle him to summary judgment. He still must satisfy the second and third steps of

---

[6] Defendant's Motion was filed on January 14, 2019 and was served on Plaintiff via postal mail. Doc. 36 at 2. Plaintiff's deadline to respond was therefore January 31, 2019. D.N.M.LR-Civ. 7.4(a) (time to respond to motions is 14 days); Fed. R. Civ. P. 6(d) (add three days to this period when service is by mail). Yet, Plaintiff did not file his response until February 4, 2019. Doc. 40.

*McDonnell Douglas*. And, even then, he would only be entitled to a trial, not summary judgment in his favor.

Finally, Plaintiff refers to the other four individuals over 60 who were also terminated. Doc. 56 at 1. As discussed above, the treatment of these individuals does not show that Defendant terminated Plaintiff for illegal age discrimination. The statistical information Plaintiff provides falls short of meeting his burden in light of the nondiscriminatory reasons Defendant offered for terminating these individuals.

I recommend Plaintiff's Motion for Summary Judgment be denied.

## CONCLUSION

For the above stated reasons, I recommend that:

1.      Defendant University of New Mexico Hospital's Motion For Summary Judgment, filed January 14, 2019 (Doc. 36), be **GRANTED**; and

2.      Plaintiff James E. Beshires, Jr.'s Motion for Summary Judgment, filed March 11, 2019 (Doc. 56), be **DENIED**.

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**